# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **RICHARD F. RIGGINS,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:10cv00030 |
| ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | By:   PAMELA MEADE SARGENT |
| Defendant. ) | UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

The plaintiff, Richard F. Riggins, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2010). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a

particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Riggins protectively filed his application for DIB on March 1, 2007, alleging disability as of November 1, 2004, based on problems with his back. (Record, ("R."), at 122-29, 177.) The claim was denied initially and upon reconsideration. (R. at 71-75, 77-78.) Riggins then requested a hearing before an administrative law judge, ("ALJ"). (R. at 86-87.) The ALJ held a hearing on June 23, 2008, at which Riggins was represented by counsel. (R. at 29-67.)

By decision dated September 3, 2008, the ALJ denied Riggins's claim. (R. at 12-26.) The ALJ found that Riggins met the nondisability insured status requirements of the Act for DIB purposes through March 31, 2010. (R. at 14.) The ALJ also found that Riggins had not engaged in substantial gainful activity since March 31, 2004. (R. at 14.) The ALJ found that the medical evidence established that Riggins suffered from severe impairments, namely degenerative disc disease of the lumbar spine with spinal fusion and obesity, but he found that Riggins did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15-21.) The ALJ also found that Riggins had the residual functional capacity to perform light work[1] that did not require him to climb ladders, ropes or scaffolds or to more than

---

[1] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2010).

occasionally use ramps, climb stairs, stoop, kneel, crouch, and crawl. (R. at 22-24.) The ALJ found that Riggins was not able to perform any of his past relevant work. (R. at 24-25.) Based on Riggins's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that there were other jobs which existed in significant numbers in the national economy which Riggins could perform. (R. at 25-26.) Thus, the ALJ found that Riggins was not under a disability as defined under the Act and was not eligible for benefits. (R. at 26.) *See* 20 C.F.R. § 404.1520(g) (2010).

After the ALJ issued his decision, Riggins pursued his administrative appeals, (R. at 2-6), but the Appeals Council denied his request for review. (R. at 27-28.) Riggins then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2010). This case is before the court on Riggins's motion for summary judgment filed November 10, 2010, and on the Commissioner's motion for summary judgment filed December 9, 2010.

*II. Analysis*

Riggins argues that substantial evidence does not support the ALJ's decision that he did not suffer from a severe mental impairment. Based on my review of the record, I agree, and I recommend that the court vacate the Commissioner's decision denying benefits and remand Riggins's claim to the Commissioner for further development.

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62

(1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2010).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2010); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the

ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

In reaching his decision that Riggins did not suffer from a severe mental impairment, the ALJ recited that the record contained office records from Jeanne Watson, Ph.D., a licensed professional counselor, who treated Riggins approximately monthly from October 17, 2007, through June 18, 2008. (R. at 19.) The ALJ noted that Watson stated that Riggins suffered from moderate impairment of long-term and short-term memory, borderline cognitive functioning, some hallucinations and delusional thoughts, intense paranoia, anger, low self-esteem, anxiety, sleep disturbance, migraines, rage reactions, mood swings and panic. (R. at 19.) The ALJ also noted that Watson had diagnosed Riggins as suffering from depression with rage and mood swings, schizoaffective disorder, generalized anxiety with panic, attention deficit disorder and post-traumatic stress disorder. (R. at 19-20.) He noted that Watson placed Riggins's Global Assessment of Functioning[2], ("GAF"), score at 40.[3] (R. at 20.)

The ALJ further noted that Watson completed a Medical Assessment of Ability to Perform Work-Related Activities (Mental) for Riggins on April 23, 2008. (R. at 20.) On this assessment, Watson stated that Riggins had poor to no ability in every mental functional category. (R. at 20.) The ALJ noted that Watson

---

[2] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[3] A GAF of 31 to 40 indicates "[s]ome impairment in reality testing or communication ... OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. ..." DSM-IV at 32.

stated that Riggins had impaired judgment and bizarre, hostile behavior, poor social skills, cognitive problems and chronic pain, all of which triggered dangerous, antisocial behaviors and psychotic thoughts. (R. at 20.) The ALJ also noted that Watson said that Riggins was disoriented, verbally aggressive, severely paranoid and responded to auditory and visual hallucinations in an aggressive manner. (R. at 20.) The ALJ further noted that Watson stated that Riggins avoided going out in public because everybody made him angry, triggering panic attacks and rage. (R. at 20.)

The ALJ does not indicate what, if any, weight he gave the medical evidence from Watson. Nor does he give any reason for discounting Watson's opinions. In fact, after reciting all this evidence of Riggins suffering from serious mental impairment, the ALJ simply finds: "The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." (R. at 20.) The ALJ cites no evidence contained in the record to support this opinion. In fact, the ALJ admits that Disability Determination Service did not evaluate Riggins's claim based on any mental impairment. (R. at 20.) The only other evidence the ALJ cites regarding Riggins's mental impairment is evidence that Riggins was prescribed Zoloft for depression beginning as early as 2004. Several pages later, the ALJ, in considering Riggins's residual functional capacity stated that he was giving the assessment prepared by Watson "no weight because she rated the claimant's ability as 'poor' in every mental functional category and neither her own notes nor the claimant's activities of daily living support her conclusions." (R. at 24.)

While it is the ALJ's duty to weigh the medical evidence, an ALJ may not simply disregard uncontradicted expert opinions in favor of his own opinion on a subject that he is not qualified to render. *See Young v. Bowen*, 858 F.2d 951, 956 (4th Cir. 1988); *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984)."[T]he [Commissioner] must indicate explicitly that all relevant evidence has been weighed and its weight." *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979). "The courts … face a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence. Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977) (quoting *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)).

There is no psychological or psychiatric evidence contradicting Watson's opinions contained in the record. In addition to Watson's records, (R. at 488-93, 505-09), the record contains evidence from Riggins's medical doctors documenting mental or emotional problems. On June 10, 2004, Laura LaRue, C.F.N.P., with Fries Family Care, noted that Riggins "definitely shows depression." (R. at 343.) On July 6, 2004, Dr. Paul Liebrecht, M.D., noted that there was a "strong functional/ emotional component" with Riggins. (R. at 499.) On July 20, 2004, Dr. Liebrecht noted that Riggins was "rather angry and disgusted." (R. at 495.) On July 23, 2004, Dr. Liebrecht noted that Riggins was taking Zoloft and was "somewhat depressed." (R. at 496.) On September 16, 2004, Riggins reported an increase in anxiety to Dr. Stephen A. Grubb, M.D. (R. at 450.)

It also is important to note that Riggins told Watson that he attended special education classes in school. (R. at 489.)

Based on the above, I find that the ALJ did not properly weigh the medical evidence regarding Riggins's mental impairment. Therefore, I find that substantial evidence does not exist to support the ALJ's finding that Riggins did not suffer from a severe mental impairment.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist in the record to support the ALJ's decision that Riggins did not suffer from a severe mental impairment; and

2. Substantial evidence does not exist in the record to support the ALJ's finding that Riggins was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Riggins's and the Commissioner's motions for summary judgment, vacate the Commissioner's decision denying benefits and remand the case to the Commissioner for further development.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: January 24, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE